**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS A VENA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MOORE, SCHULMAN & MOORE, APC, et al.<br><br>　　　　　　　　Defendants. | Case No.:   3:22-cv-0437-W-BLM<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND STRIKE [DOC.7]** |

  Defendants Moore, Schulman & Moore, APC and Julie Westerman move to dismiss the federal cause of action under Federal Rule of Civil Procedure 12(b)(6) and move to strike the state-based causes of action under California's Anti-SLAPP Statute, Code Civ. Pro., § 425.16.  Plaintiff Nicholas A. Vena opposes.

  The Court decides the matters on the papers submitted and without oral argument. Civ. L.R. 7.1(d.1).  For the reasons that follow, the Court **DENIES** Defendants' motion [Doc. 7].

## I. BACKGROUND

This lawsuit arises out of an underlying state court marital-dissolution proceeding between Plaintiff Nicholas A. Vena and Christine Vena. In this case, Nicholas is suing Christine's former attorneys for, among other things, allegedly violating his due-process right to a fair and unbiased tribunal.

### A. The Underlying Marital Dissolution Proceeding.

On November 18, 2019, Christine filed a petition for legal separation against Nicholas in the San Diego Superior Court, North County Family Division. (*Compl.* [Doc. 1] ¶ 10.) Christine is represented by Defendant Julie Westerman, a partner of Defendant Moore, Schulman & Moore, APC ("MSM"). (*Id.*) "In addition to legal separation, the case involved substantial contested issues, including child custody and visitation; child support; spousal support; property characterization; valuation, and division; and attorney's fees and costs." (*Id.*)

On November 5, 2020, the petition was amended, converting it to a marital-dissolution action. (*Compl.* ¶ 11.) On July 15, 2021, the case was bifurcated and a status-only judgment filed. (*Id.*) Nicholas's and Christine's marriage has now been dissolved, but other substantial issues remain pending. (*Id.* ¶¶ 11, 17.)

On March 13, 2020, Nicholas invoked his right to an evidentiary hearing on child custody. (*Compl.* ¶ 17.) Judge William Wood entered temporary orders and set a trial for October. (*Id.*) Unfortunately, because of the COVID-19 pandemic, the trial date was vacated, which resulted in Nicholas being deprived of time with his children. (*Id.* ¶¶ 17, 18.) To expedite the action, Nicholas agreed to appoint a privately compensated temporary judge to preside over the case. (*Id.* ¶ 18.)

### B. The Parties Retain Commissioner Jeannie Lowe.

Defendant Westerman suggested two candidates, one of which was retired family court commissioner, the Hon. Jeannie Lowe. (*Compl.* ¶ 18.) Nicholas agreed and

entered an agreement with the alternate dispute resolution organization JAMS to hire Commissioner Lowe to adjudicate their marriage dissolution, preside over the child custody trial and financial trial, and resolve certain discovery motions and hearings. (*Id.* ¶ 19.) Commissioner Lowe's fees were $4,000 per day, $2,200 per half day, and additional time was $500 per hour, plus other fees and expenses. (*Id.* ¶ 19.) Each party was responsible for half the fees. (*Id.* ¶ 20.) Nicholas's portion amounted to over $63,000. (*Id.*)

On September 17, 2020, Commissioner Lowe signed her oath of office, which included a promise to comply with Canon 6 of the Code of Judicial Ethics. (*Compl.* ¶ 21.) The next day, Commissioner Lowe signed a disclosure checklist, disclosing her past service as a "neutral" for MSM (Christine's law firm), but no new or impending engagements with the firm. (*Id.* ¶ 22.) The court signed her appointment on October 6, 2020. (*Id.* ¶ 21.)

### C. Defendants Retain Commissioner Lowe in Eight New or Expanded Matters Without Disclosing to Nicholas.

Unbeknownst to Nicholas and his counsel, on September 22, just days after Commissioner Lowe signed her disclosure checklist, MSM began sending a large volume of lucrative business to Commissioner Lowe via JAMS. (*Compl.* ¶ 26.) The first matter was an expansion of a previously disclosed case, which had been closed but was reopened. (*Id.*) Over the course of several months, MSM retained Commissioner Lowe in multiple new matters, most of which were ongoing during Nicholas's and Christine's child-custody trial. (*Id.* ¶ 27.) In total, MSM offered Commissioner Lowe employment in eight new or expanded matters. (*Id.*)

Commissioner Lowe never disclosed any of the expanded or new matters. (*Compl.* ¶ 29.) Nicholas alleges "MSM and Westerman intended that [he] and his counsel remain unaware of the new business and the money going to Commissioner Lowe" because if the business dealings were disclosed, "MSM and Westerman knew that Commissioner Lowe

3

would likely be deemed disqualified as of the date she began engaging in undisclosed business dealings with them." (*Id.* ¶ 31.)  Further, Nicholas alleges that once their dealings began to come to light, MSM and Westerman resisted requests to fully disclose their dealings with Commissioner Lowe.  (*Id.*)

As a result of MSM's retention of Commissioner Lowe on the undisclosed matters, Nicholas alleges that she was biased and openly favored Christine's counsel. (*Compl.* ¶ 39.)  According to the Complaint, Commissioner Lowe exhibited an unusual and inappropriate degree of familiarity towards Christine's attorneys, including Westerman, while behaving coldly to Nicholas's attorney.  (*Id.*)  And during the litigation, Westerman relied on MSM's favored status to make baseless arguments, misrepresent the record, and violate procedural rules. (*Id.* ¶ 40.)  Ultimately, Commissioner Lowe tentatively awarded Christine more than half-time physical custody and final decision-making authority over all the children, including an older child who lived full-time with Nicholas.  (*Id.* ¶ 41.)

When Commissioner Lowe's acceptance of the undisclosed business came to light, Nicholas's counsel moved to disqualify her.  (*Compl.* ¶ 43.)  Ultimately, Commissioner Lowe recused herself and the case was reassigned to Superior Court Judge Victor Torres. (*Id.* ¶ 47.)  On February 17, 2022, Judge Torres issued an order voiding all of Commissioner Lowe's orders "for failure to disclose…." (*Id.*)  Nicholas contends that by then, he had incurred over $1 million in costs and legal fees for the voided legal proceedings.  (*Id.* ¶ 49.)

On April 1, 2022, Nicholas filed this lawsuit against MSM and Westerman.  (*See Compl.*)  The Complaint asserts four causes of action for: (1) violation of federal civil rights, under 42 U.S.C. § 1983; (2) negligence; (3) willful misconduct; and (4) intentional interference with contractual relations.  (*Id.*)  On May 10, 2022, Defendants filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motion to strike under California's Anti-SLAPP Statute.  Nicholas opposes the motion.

## II. MOTION TO DISMISS

### A. Standard

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Analysis

Defendants move to dismiss Nicholas's first cause of action for violation of his Fifth Amendment rights, under 28 U.S.C. § 1983. To state a section 1983 claim, a plaintiff must allege facts setting forth two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

5

violation was committed by a person acting under the color of State law. Long v. County of L.A. 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins 487 U.S. 42, 48 (1988)).

With regard to the second element, "a claim may lie against a private party who 'is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (quoting Dennis v. Sparks, 449 U.S. 24, 27–28 (1980)). Whether someone is acting under the color of State law is generally a question of fact, not law. Schowengerdt v. Gen'l Dynamics Corp., 823 F.3d 1328, 1338 (9th Cir. 1987).

Defendants contend Nicholas fails to plead facts demonstrating Defendants were acting under color of state law. While Defendants do not dispute that Commissioner Lowe was a state actor for purposes of section 1983 liability, they argue the Complaint's factual allegations fail to demonstrate joint action between them. The Court disagrees.

Nicholas's section 1983 claim is premised on Defendants' and Commissioner Lowe's violation of his due-process rights. (*Compl.* ¶¶ 54–56.) These include the right to a fair tribunal and unbiased decisionmaker: "a 'fair trial in a fair tribunal is a basic requirement of due process.' . . . Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" Withrow v. Larkin, 421 U.S. 35, 46 (1975) (quoting In re Murchison, 349 U.S. 133, 136 (1955)). Accordingly, the issue is whether the Complaint's factual allegations and the reasonable inferences from those allegations demonstrate that Defendants were willful participants in violating Nicholas's right to a fair and unbiased tribunal.

The Complaint alleges that several days after Commissioner Lowe signed her oath of office in the marital-dissolution proceeding, Defendants began hiring her to work on new or expanded matters, none of which were disclosed to Nicholas. (*Compl.* ¶ 26–29.) Defendants allegedly engaged Commissioner Lowe on the undisclosed matters to make

her "beholden to them." (*Id.* ¶ 37.) The Complaint further alleges that because of their financial relationship, Westerman was allowed to make baseless arguments, misrepresent the record, and violate procedural rules without being held accountable. (*Id.* ¶ 40.) Instead, MSM and their client were ultimately rewarded by Commissioner Lowe, who modified the previous order for joint legal custody and awarded Christine more than half-time physical custody, including final decision-making authority over the child who lived with Nicholas. (*Id.* ¶ 39.)

Based on these factual allegations, the Court finds that Nicholas has adequately pled that his right to a fair and unbiased tribunal in the marital-dissolution proceeding was violated and that Defendants willfully participated with Commissioner Lowe in the violation.

### III.   ANTI-SLAPP MOTION

#### A.   Standard

In moving to strike under the Anti-SLAPP statute, "the moving party must show (1) the complaint alleges *protected speech or conduct*, and (2) the 'relief is sought based on allegations *arising from*' the protected activity." Gaynor v. Bulen, 19 Cal.App.5th 864, 877 (2018) (emphasis in original) (quoting Baral v. Schnitt, 1 Cal.5th 376, 396 (2016)). If the moving party satisfies this showing, the burden shifts to the opposing party to demonstrate a probability of prevailing on the claim. Navellier v. Sletten, 29 Cal.4th 82, 88 (2002).

In evaluating if the relief sought *arises from* protected activity, the "focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." Navellier, 29 Cal.4th at 92 (emphasis in original). "A claim arises from protected activity when that activity underlies or forms the basis for the claim." Park v. Board of Trustees of California State University, 2 Cal.5th 1057, 1062 (2017) (citations omitted). "Critically, 'the defendant's act underlying the plaintiff's cause of action must

7

itself have been an act in furtherance of the right of petition or free speech.'" Id. at 1063 (quoting City of Cotati v. Cashman, 29 Cal.4th 69, 78 (2002)). "The mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." Id. (quoting Navellier, 29 Cal.4th at 89) (internal bracket omitted).

### B.  Analysis.

Defendants argue that Nicholas's state-law claims arise from their "petitioning in front of a particular temporary judge for ADR services…." (*P&A* 8:14–17.)  In support of this argument, Defendants cite the Complaint's allegations that they "sent a large volume of lucrative business to Commissioner Lowe via JAMS" and that Defendants "offered Commissioner Lowe employment in *eight* new or expanded matters." (*PA&* 9:27–10:6, citing *Compl.* ¶¶ 26, 27.)  (*Id.* 9:27–10:6, citing *Compl.* ¶ 27.)  The Court is not persuaded by Defendants' argument.

Defendants fail to support the contention that this lawsuit arises from "petitioning" activity in front of Commissioner Lowe.  They acknowledge that under the statute, "petitioning" generally involves "any 'written or oral statement or writing made before … a judicial proceeding'" or any "legal petitions and 'all communicative acts performed by attorneys as part of their representation of a client….'" (*P&A* 8:16–21, citing Code Civ. Pro. § 425.16 (e)(1) and Optional Capital, Inc. v. Akin Gump Strauss Hauser & Feld, LLP, 8 Cal.App.5th 95, 113 (2017)).  Yet, Defendants do not point to any conduct typically considered "petitioning," such as legal petitions, briefs, oral statements, arguments or any other communicative acts on behalf of a client that gives rise to their potential liability in this case.  Instead, Defendants rely on the Complaint's allegation that they hired Commissioner Lowe: "the Complaint alleges that MSM 'sent a large volume of lucrative business to Commissioner Lowe via JAMS'" and "further alleges MSM offer[ed] Commissioner Lowe 'eight new or expanded matters.'" (*Id.* 9:27–10:6, citing

*Compl.* ¶¶ 26, 27.) Defendants, however, provide no support for the proposition that hiring Commissioner Lowe constitutes "petitioning" activity under the statute.

All the cases Defendants cite involve claims arising from negotiations, arguments or other communications made during underlying litigation. In <u>Optional Capital, Inc.</u>, 8 Cal.App.5th 95, the attorneys' conduct involved "work in negotiating a settlement of the state court action" and "Plaintiff even relie[d] on *in-court* statements by Akin lawyers as evidence of" the conduct giving rise to the claim. <u>Id.</u> at 114. In <u>Navellier</u>, 29 Cal.4th 82, the lawsuit arose out of defendant's negotiation and execution of a release agreement entered in an earlier lawsuit, defendant's argument regarding the validity of the release in the case, and the counterclaims pursued. <u>Id.</u> at 90–91. In <u>Kashian v. Harriman</u>, 98 Cal.App.4th 892 (2002), the claim "arose directly from [defendant's] acts or statements, or alleged act or statements, made in connection with environmental litigation he was bringing on behalf of" defendant's client and other organizations. <u>Id.</u> at 907–908. Thus, none of Defendants' cases support the theory that an attorney's retention of a temporary judge for ADR services is protected under the Anti-SLAPP statute.

The Court is also not convinced that the activity giving rise to Nicholas's state-law claims is simply Defendants' retention of Commissioner Lowe. Instead, the Complaint's allegations establish that Nicholas's state-law claims are also based on Defendants' failure to disclose the formation of their financial relationship, i.e., the retention.

In addition to alleging Commissioner Lowe was obligated to disclose "information relevant to the question of disqualification, including business relationships with lawyers in the case" (*Compl.* ¶¶ 22–25), Nicholas alleges that Defendants knew their financial relationship with Commissioner Lowe had to be disclosed but intended to keep Nicholas and his counsel from learning about it:

> 31. Because of their training and experience, Westerman and the other MSM partners knew of the disclosure requirements. MSM and Westerman also knew that Commissioner Lowe would not disclose these business dealings, and intended for the new business not to be disclosed. This was only confirmed when she refrained from disclosing the first engagement,

> followed by each one afterwards. MSM and Westerman intended that Nick and his counsel remain unaware of the new business and the money going to Commissioner Lowe. Had the undisclosed business dealings come to light, MSM and Westerman knew that Commissioner Lowe would likely be deemed disqualified as of the date she began engaging in undisclosed business dealings with them. They not only did not reveal the truth, but resisted requests to fully disclose their dealings with Commissioner Lowe once those dealings began to come to light. They resisted Nick's counsel's efforts to remove Commissioner Lowe from the case, both by termination of the stipulation, and also by disqualification.
>
> 32.   The continuing disclosure requirement is intended to allow parties to evaluate a judge's impartiality going forward, and if warranted to take remedial action, such as seeking disqualification. Nondisclosure not only thwarts this purpose, but also gives a secret advantage to artful parties, who can rely on and take advantage of their favored status while blindsiding their duped opponents.

(*Id.*, emphasis added.)  Defendants' liability for failing to disclose is then specifically set forth in the state-law causes of action.  The negligence and willful-misconduct causes of action both allege:

> Westerman and MSM breached their duty to Nick when they channeled lucrative business to Commissioner Lowe that ***neither she nor they disclosed***, which they knew would not be disclosed, and which they knew was not likely to be discovered promptly, if ever. In fact, they both expected and hoped Nick and his counsel would not discover it at all.

(*Compl.* ¶¶ 65, 69, emphasis added.)  The intentional interference with contractual relations cause of action then specifically attributes Nicholas's injury—i.e., the disruption of his contract with JAMS—to the failure to disclose:

> Because Westerman and MSM brought about the facts creating disqualification at the very beginning of the case [i.e., by retaining and failing to disclose the retention of Commission Lowe] all of Commissioner Lowe's rulings were void when made and never had any legal import. Their actions therefore were substantially certain to deprive Nick of the benefit of his bargain with JAMS. This amounts to a disruption of the contractual relationship.

(*Id.* ¶ 78.) Thus, Nicholas's state-law causes of action and his injuries do not arise simply from Defendants hiring Commissioner Lowe, but from their failure to disclose it.

While none of the cases the parties cite involve claims arising from an attorney hiring a temporary judge, the Court is persuaded by one California Court of Appeal case that such conduct is not protected. In <u>Coretronic Corp. v. Cozen O'Conner</u>, 192 Cal.App.4th 1381 (2011), Coretronic filed a claim with its insurance carrier requesting a defense in an underlying trade dispute with E&S International Enterprises, Inc. ("E&S"). The insurer retained the Cozen O'Connor law firm ("Cozen") as coverage counsel to evaluate the claim. The insurer denied Coretronic's claim, but Coretronic continued to communicate and share confidential information with the Cozen attorneys hoping the insurer would reconsider its denial. Meanwhile, Cozen began representing E&S—the party suing Coretronics—in an unrelated lawsuit. When the Cozen attorney involved with Coretronic realized the firm was also representing E&S, he disclosed it and the firm withdrew from representing E&S. Coretronics then sued Cozen alleging the "lawyers concealed their concurrent status as E&S's counsel in the other action as a means to gain access to plaintiffs' sensitive information that would benefit E&S in its lawsuit against plaintiffs." <u>Id.</u> at 1387.

Cozen responded to the complaint by filing an Anti-SLAPP motion, which the trial court denied. In affirming the decision, the Court of Appeal rejected the theory that because the attorneys' failure to conceal arose in the context of litigation it involved petitioning activity:

> The gravamen of the complaint is premised on defendants' failure to disclose Cozen's representation of E&S, while obtaining from plaintiffs their confidential information involving their defense of the lawsuit E&S brought against them. That the concealment occurred in the context of litigation does not change this result, as it is clear that any litigation activity is only incidental to plaintiffs' allegations of wrongdoing.

<u>Id.</u> at 1391.

Similar to Coretronic, although the factual background for Nicholas's state-law causes of action involve other legal proceedings, Defendants' alleged liability does not arise from any litigation-related activity. Instead, like the Cozen attorneys, Defendants' liability arises from the creation of a relationship with a third party, and the failure to disclose it. Thus, in both cases, "any assertedly protected activity is not the root of the complaint; it is merely the setting in which the claims arose." Id., at 1392.

For these reasons, the Court finds Defendants failed to establish that this lawsuit arises from petitioning activity. Thus, the Court does not reach whether Nicholas has demonstrated a probability of success on the merits. See Coretronic, 192 Cal.App.4th at 1393 ("Because we conclude plaintiffs' claims to not arise from protected activity, we need not consider whether plaintiffs have demonstrated a probability of prevailing on the merits of those claims.").

### C.  **Objections.**

Nicholas objects to Defendants' Reply on the basis that it makes new arguments and alleges new facts. (*Pl's Obj*. [Doc. 14] 1:25–28.) Most of Defendants' allegedly new arguments and facts relate to whether Nicholas can satisfy the probability-of-success-on-the-merits prong of the Anti-SLAPP analysis. (*See id.* 2:12–3:9.) As set forth above, because Defendants failed to establish that their potential liability arises from protected conduct, the Court did not address the probability of success prong. Thus, those objections are overruled as moot.

Nicholas also objects to Defendants' Reply, which cites the marital-dissolution action to rebut Nicholas's contention that (1) Defendants failed to discuss what the underlying mediations were about and (2) that private, contractual arbitrations are not covered by the Anti-SLAPP statute. (*See Pl's Obj.* 2:3–11, citing *Reply* 5:11–6:12.)

Again, the Court did not rely on either issue is deciding the Anti-SLAPP motion and therefore the objections are moot.[1]

Next, Defendants object to Nicholas's Sur-Reply [Doc. 13]. (*See Defs' Obj.* [Doc. 14].) Nicholas argues the Sur-Reply is necessary to address the new arguments and facts raised in Defendants' Reply. (*Sur-Reply* 1:23–26.) Because none of the new issues raised in Defendants' Reply had any bearing on resolution of the Anti-SLAPP motion, the Court **GRANTS** Defendants' objection and will not consider any of the arguments made in the Sur-Reply.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Defendants' motion [Doc. 7].

**IT IS SO ORDERED.**

Dated:  August 31, 2022

_____
Hon. Thomas J. Whelan
United States District Judge

---

[1] To the extent the Reply also intended to assert the state-law causes of action are based on petitioning activity in the marital-dissolution action, the Court agrees that the argument was not included in the moving papers, which only relied on the "eight new or expanded matters." (*See P&A* 10:2–6.) Accordingly, the Court would **GRANT** Nicholas's objection.