UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS A VENA,<br><br>                           Plaintiff,<br><br>v.<br><br>MOORE, SCHULMAN & MOORE, APC, et al.<br><br>                         Defendants. | Case No.:   3:22-cv-0437-W-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND [DOC. 25]** |

      In this lawsuit, Plaintiff Nicholas Vena is suing his ex-wife's attorneys in an underlying marital dissolution case for allegedly violating his due-process right to a fair and unbiased tribunal. Plaintiff now seeks leave to amend the Complaint to add David Schulman, a named partner with Defendant Moore, Schulman & Moore, APC, as a defendant. (*Notice of Mot.* [Doc. 25] 2:2–4.) Defendants oppose the motion. (*See Opp'n* [Doc. 29].)

      The Court decides the matter on the papers submitted and without oral argument under Civil Local Rule 7.1(d)(1). For the reasons discussed below, the Court **GRANTS** the motion to amend [Doc. 25].

## I. BACKGROUND

On November 18, 2019, Christine Vena filed a petition for legal separation against Plaintiff Nicholas Vena in the San Diego Superior Court, North County Family Division.[1] (*Compl.* [Doc. 1] ¶ 10.) Christine was represented by Defendant Julie Westerman, a partner of Defendant Moore, Schulman & Moore, APC ("MSM"). (*Id.*) According to the proposed FAC, David Schulman, a named partner at MSM, also represented Christine in the underlying case, "including appearing in court on her behalf." (*P&A* [Doc. 25-1] Ex. B [Doc. 52-1] ¶ 5.) Nicholas's and Christine's marriage has now been dissolved, but other substantial issues remain pending. (*Compl.* ¶¶ 11, 17.)

Due to the COVID-19 Pandemic, Nicholas agreed to appoint a privately compensated temporary judge (PCTJ) to adjudicate their marriage dissolution, preside over the child custody trial and financial trial, and resolve certain discovery motions and hearings. (*Compl.* ¶¶ 17, 18.) Defendant Westerman suggested retired family court commissioner, the Hon. Jeannie Lowe. (*Id.* ¶ 18.) Nicholas agreed and entered an agreement with the alternate dispute resolution organization JAMS to hire Commissioner Lowe. (*Id.* ¶ 19.) Commissioner Lowe's fees were $4,000 per day, $2,200 per half day, and additional time was $500 per hour, plus other fees and expenses. (*Id.*) Each party was responsible for half of the fees. (*Id.* ¶ 20.)

Commissioner Lowe signed her oath of office, which included a promise to comply with Canon 6 of the Code of Judicial Ethics. (*Compl.* ¶ 21.) Commissioner Lowe also signed a disclosure checklist, disclosing her past service as a "neutral" for MSM (Christine's law firm), but no new or impending engagements with the firm. (*Id.* ¶ 22.) Unbeknownst to Nicholas and his counsel, just days after Commissioner Lowe signed her disclosure checklist, MSM began sending a large volume of lucrative business to Commissioner Lowe via JAMS. (*Id.* ¶ 26.) Over the course of several months, MSM

---

[1] Throughout this order, individuals will be referred to by their last names, except where multiple individuals share the same last name, i.e., Nicholas and Christine.

retained Commissioner Lowe in multiple new matters, most of which were ongoing during Nicholas's and Christine's child-custody trial. (*Id.* ¶ 27.)

Commissioner Lowe never disclosed any of the expanded or new matters. (*Compl.* ¶ 29.) MSM and Westerman also resisted requests to fully disclose their dealings with Commissioner Lowe. (*Id.*) Ultimately, Commissioner Lowe tentatively awarded Christine more than half-time physical custody and final decision-making authority over all the children, including an older child who lived full-time with Nicholas. (*Id.* ¶ 41.)

When Commissioner Lowe's acceptance of the undisclosed business came to light, Nicholas moved to disqualify her. (*Compl.* ¶ 43.) Commissioner Lowe recused and the case was reassigned to Superior Court Judge Victor Torres. (*Id.* ¶ 47.) On February 17, 2022, Judge Torres issued an order voiding all of Commissioner Lowe's orders "for failure to disclose…." (*Id.*) Nicholas contends that by then, he had incurred over $1 million in costs and legal fees for the voided legal proceedings. (*Id.* ¶ 49.)

On April 1, 2022, Nicholas filed this lawsuit against MSM and Westerman. (*See Compl.*) On January 9, 2023, Nicholas filed the current motion to amend.

## II. STANDARD

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, a party may amend its complaint only with leave of court, and leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Granting leave to amend rests in the sound discretion of the district court. Pisciotta v. Teledyne Industries, Inc., 91 F.3d 1326, 1331 (9th Cir. 1996). However, the Ninth Circuit has emphasized that leave to amend is to be granted with "extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987) (citation omitted). Nevertheless, leave to amend is not to be granted automatically. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citations omitted). Five factors are considered in evaluating a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.

3

1  Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004).  The party opposing leave to
2  amend bears the burden of demonstrating why leave should be denied. DCD Program,
3  Ltd., 833 F.2d at 187.

### III.   ANALYSIS

Nicholas contends the claims against Schulman arise from the same events set forth in the original Complaint. (*P&A* at 4:17–19.)  Defendants contend the amendment should be denied because Schulman, MSM, and Westerman would be prejudiced by the amendment, Nicholas unduly delayed in seeking to amend, the motion is brought in bad faith, and the amendment is futile. (*Opp'n* 1:8–17.)

#### A.   Bad Faith

Courts have discretion to deny leave to amend a pleading when the non-moving party can show bad faith.  Fed.R.Civ.P. 15(a).  Courts evaluate bad faith by determining whether the moving party seeks to prolong meritless litigation by adding baseless legal theories or if there is any evidence of wrongful motive.  Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 881 (9th Cir. 1999).

Nicholas contends leave to amend is justified because discovery obtained in December 2022 revealed that Schulman had a larger role in the wrongs outlined in the Complaint. (*P&A* 2:3–5.)  Defendants argue that Nicholas's stated reason demonstrates bad faith because he was aware of Schulman's involvement in the underlying action in April 2022, when this lawsuit was filed. (*Opp'n* 6:25–7:4.)  But as Nicholas points out in the reply, on January 3, 2022—before this lawsuit was filed—Schulman and Christine filed declarations characterizing Schulman's involvement in the underlying case as "minimal." (*Pl.'s Reply* [Doc. 31] 6:5–7, n. 3; *Reply Ex. A* [Ex. 31-1] ¶ 10; *Reply Ex. B* [Ex. 31-1] ¶ 13.)  According to Nicholas, the information obtained during discovery in

December 2022 demonstrated Schulman had a more substantial role.  (*Reply* 7:10–12.)  Accordingly, the Court finds Defendants have failed to establish bad faith.[2]

### B.     Undue Delay

"Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens upon the court."  Fresno Unified Sch. Dist. V. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1176 (E.D. Cal. 2013).  "A strong presumption against a finding of undue delay exists when a case is still in discovery."  Hologram USA, Inc. v. Pulse Evolution Corp., 2015 WL 316900, at *3 (D. Nev. Jan. 13, 2015) (citing DCD Programs, Ltd., 833 F.2d at 187–88).

Defendants again argue that Nicholas "has known all along about Schulman's involvement in the underlying action" and "made a strategic decision at the outset of the litigation to not include him as a defendant." (*Opp'n* 5:18–20.)  Thus, Defendants contend Nicholas unduly delayed by waiting 10 moths to seek leave to amend.  (*Id.* 5:28.)  However, as stated in the previous section, Schulman's and Christine's declarations filed in January 2022 asserted Schulman was only minimally involved in the underlying case.  (*Pl.'s Reply* 6:5–7, n. 3; *Reply Ex. A* ¶ 10; *Reply Ex. B* ¶ 13.)  Nicholas further contends the discovery obtained in December contradicts Schulman's and Christine's declarations.  Accordingly, Defendants' argument that Nicholas delayed 10 months in moving to amend lacks merit.

Nevertheless, Defendants cite Jackson, 902 F.2d 1385, as support for the conclusion that Nicholas unreasonably delayed.  But in Jackson, the plaintiff waited

---

[2] Nicholas also seeks to amend because after he obtained Defendants' insurance policy on December 9, 2022, he learned "the amount of the policy is likely to be inadequate to satisfy the judgment if Plaintiff prevails."  (*P&A* 2:3–5, 2:14–21.)  Defendants argue this does not make "any logical sense" because the same policy applies to Schulman, Westerman and MSM.  (*Opp'n* 7:7–9.)  Assuming Defendants are correct, Nicholas's recent discovery of Schulman's more extensive role in the underlying case establishes a valid basis for leave to amend.

5

eight-months after discovering the new facts to move to amend the complaint. Id. at 1388. Because Nicholas filed this motion within one month of discovering the new facts, Jackson does not assist Defendants.

Next, Defendants cite Chados v. W. Publ. Co., 292 F.3d 992 (9th Cir. 2002). That case, however, involved the denial of a motion for leave to file a second amended complaint based on facts discovered before the first amended complaint was filed. Id. at 1003. Accordingly, Chados is also distinguishable and does not assist Defendants.

Finally, Defendants assert that this case is no longer in the early stages of litigation since "the final pretrial conference has been scheduled since November 10, 2022." (*Opp'n* 6:1–8.) But discovery did not begin until November 2022 (*Joint Disc. Plan* [Doc 23] 3:28–4:1), the discovery cut off is June 2, 2023 (*Scheduling Order* [Doc. 22 ¶ 3), the motion cut off is September 22, 2023. (*id.* ¶ 9), and the final pretrial conference is January 22, 2024.  (*Jt Disc. Plan* [Doc. 23] 3:28–4:1; *Scheduling Order* [Doc. 22] ¶¶ 3, 9, 16.)  Thus, Defendants' contention lacks merit.

For all these reasons, the Court finds Nicholas did not unduly delay.

### C.     Prejudice to the Opposing Party

Defendants contend they will suffer prejudice if Nicholas is given leave to amend because it will "require addressing Schulman's additional statute of limitation defenses, require re-conducting discovery, require additional motion practice, and delay the resolution of the case." (*Opp'n* 3:13–15.)

Of all the factors, prejudice to the opposing party carries the most weight within the Ninth Circuit. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the [other] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.").  "In evaluating prejudice courts often consider whether relevant deadlines would have to be continued as a result of the new pleading, the stage of discovery at the time of amendment, the extent to which additional discovery would have to be conducted, and

6

the degree to which amendment may delay the proceeding." Imblum v. Code Corp., 2017 WL 3594569, at *2 (S.D. Cal. Aug. 21, 2017) (citing Johnson v. Serenity Transp., Inc., 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015) (collecting cases)).  "The party opposing a motion to amend bears the burden of showing prejudice." Id. (citing DCD Programs, Ltd., 833 F.2d at 187).

  Defendants have not established that granting leave to amend would result in prejudice.  Because Schulman is a named partner of Defendant MSM and was involved in the underlying case, he has been aware of this litigation since the start and is aware of the claims being asserted against his firm and partner, Westerman.  While discovery began in mid-November, the parties' Joint Motion for Protective Order governing the handling of material exchanged during the litigation was not entered until November 30, 2022.  (*Jt. Motion for Protective Order* [Doc. 23].)  Additionally, as pointed out in the previous section, the discovery cutoff is not until June 2, 2023 and the motion cutoff is September 22, 2023.  (*Scheduling Order* ¶¶ 3, 9.)  While some modification to the current scheduling order might become necessary, given Schulman's connection with the other Defendants and underlying case, as well as the amount of time still remaining before the discovery and motion cutoffs, Defendants' contention that the amendment would cause significant delay is not persuasive.

  Defendants also argue that allowing Nicholas to add Schulman to the litigation "would fundamentally change the nature of this lawsuit." (*Opp'n* 2:25–26.)  But the proposed first amended complaint does not add any new causes of action or legal theories and Schulman's potential liability is based on the same alleged misconduct asserted against Westerman.  (*P&A* at Ex. B at ¶¶ 26–28, 30, 32, 35, 38, 41, 43, 51–79.)  Thus, Defendants have failed to demonstrate that adding Schulman to the case would fundamentally change the nature of the lawsuit.

  For these reasons, the Court finds Defendants have failed to demonstrate that allowing the amendment would prejudice the Defendants.

### D.   Futility of Amendment

A court may deny leave to amend if it appears to be futile or legally insufficient. See Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2001). "The test of futility is the same standard used in considering the sufficiency of a pleading challenged under Rule 12(b)(6)." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988), implied overruling on other grounds by Ashcroft v. Iqbal, 566 U.S. 662 (2009). A court must accept the allegations in the pleadings as true in considering the amendment. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Defendants first argues that Nicholas's section 1983 claim fails because he is attempting "to hold Schulman liable just because 'he is a named partner'" of MSM. (*Opp'n* 8:11–13.) According to Defendants, Nicholas has made no showing of personal participation by Schulman or the "individualized inquiry into causation." (*Id.* 8:7–10.) However, Nicholas's claims against Schulman are not based simply on his status as a named partner, but his alleged personal participation in the underlying case. (*See Reply* 8:20–25; *P&A* at Ex. B at ¶¶ 5, 26–28, 30, 32, 38, 40–41, 43, 52–55, and 57–58.) This is consistent with Nicholas's basis for seeking leave to amend—i.e., discovery in December 2022 of Schulman's more extensive involvement in the case.

Defendants next argue that several of Nicholas's claims are time-barred because the "[t]he statute of limitations began to run no later than September 22, 2021 when Plaintiff filed a Verified Statement of Grounds to Disqualify Temporary Judge in the underlying action in San Diego Superior Court." (*Opp'n* 8:22–25.) The problem with this argument is Defendants rely on the 1-year statute of limitations for legal malpractice claims. However, Nicholas—who was not Defendants' client—is not suing for legal malpractice, but for personal injury. The applicable statute of limitations is two years. See Cal. Code Civ. Proc., § 335.1; Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 828 (9th Cir. 2003) ("The applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for

personal injury actions."). Thus, Nicholas's personal-injury claims against Schulman are not time barred.

### IV.   CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's motion for leave to amend the Complaint (as set forth in Exhibits A and B [Docs. 25-1]) is **GRANTED** [Doc. 25]. Plaintiff must file the first amended complaint on or before **March 8, 2023**.

**IT IS SO ORDERED.**

Dated: March 1, 2023

_____
Hon. Thomas J. Whelan
United States District Judge